UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY HEFNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   4:15-cv-2552 |
| | ) | |
| DIVERSIFIED CONSULTANTS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S COMPLAINT**

Plaintiff, MARY HEFNER, (hereinafter referred to as "Plaintiff") brings this action for damages, and other legal and equitable remedies resulting from the illegal actions of DIVERSIFIED CONSULTANTS, INC., ("Defendant") in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone without her prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"). The TCPA prohibits unsolicited voice calls to cellular telephones without prior express consent within the meaning of the TCPA.  In an effort to enforce a fundamental right to privacy, Plaintiff alleges, by and through her counsel, Agruss Law Firm, LLC, the following against Defendant:

**INTRODUCTION**

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. 227, *et seq.* ("TCPA").

2. The TCPA was designed to prevent calls and text messages like the ones described herein, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to

1

private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate similar entities may contact them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub. L. No. 102–243, § 11. In support of this, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* at §§ 12-13. *See also, Mims*, 132 S. Ct. at 744.

5. As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act … is well known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

**JURISDICTION AND VENUE**

6. This Court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. §227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

7. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

**PARTIES**

8. Plaintiff is a natural person residing in Pasadena, Harris County, Texas.

9. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153 (10).

10. Plaintiff is informed and believes, and thereon alleges, that Defendant is, and at all times mentioned herein, was a corporation whose corporate headquarters are in Jacksonville, Florida.

11. Defendant is, and at all times mentioned herein, a corporation and is a "person," as defined by 47 U.S.C. § 153 (10).

12. Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of Texas and in the County of Harris, and within this judicial district.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

13. As noted above, in 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

14. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers."Specifically, the plain language of section 227(b)(l)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the

prior express consent of the called party.

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

16. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."

17. The TCPA prohibits the use of any "automatic telephone dialing systems" to call cellular telephones. It also prohibits the use of artificial or prerecorded messages.

    a. "Automatic telephone dialing system" means any equipment that has the "*capacity* to dial numbers without human intervention." *Griffith v. Consumer Portfolio Serv., Inc.,* 2011 WL 3609012 (N.D. Ill. Aug. 16, 2011) (emphasis original).

### FACTUAL ALLEGATIONS

18. Within four (4) years of Plaintiff filing this Complaint, Defendant communicated with Plaintiff regarding a T-Mobile account ("Account").

19. Within four (4) years of Plaintiff filing this Complaint, Defendant began to utilize Plaintiff's cellular telephone number, ending in 8848, to place virtually daily incessant

calls to Plaintiff pertaining to the Account.

20. Within four (4) years of Plaintiff filing this Complaint, Defendant has called Plaintiff on her cellular telephone with pre-recorded messages.

21. Defendant calls Plaintiff's cellular telephone at an annoying and harassing rate, calling Plaintiff up to four (4) times per day.

22. Defendant calls from 832-548-4302, 832-548-4275, and 832-548-4348, which are three of Defendant's telephone numbers.

23. Within four (4) years of Plaintiff filing this Complaint, Plaintiff answered one of Defendant's collection calls and told Defendant's collector to stop calling her.

24. Despite this request, Defendant continued to place collection calls to Plaintiff on her cellular telephone.

25. Specifically, Defendant placed collection calls to Plaintiff's cellular telephone on the following dates and/or times from 832-548-4302:

   a. 8/23/12 – 12:16 PM
   b. 8/22/12 – 2:10 PM
   c. 8/21/12 – 5:51 PM
   d. 8/21/12 – 12:20 PM
   e. 8/20/12 – 6:50 PM
   f. 8/20/12 – 11:54 AM
   g. 8/15/12 – 5:13 PM
   h. 8/15/12 – 1:16 PM
   i. 8/14/12 – 5:23 PM
   j. 8/14/12 – 12:47 PM
   k. 8/13/12 – 7:28 PM
   l. 8/11/12 – 11:12 PM
   m. 8/10/12 – 4:08 PM
   n. 8/10/12 – 3:12 PM
   o. 8/10/12 – 9:03 AM
   p. 8/09/12 – 5:18 PM
   q. 8/09/12 – 10:05 AM
   r. 8/08/12 – 10:50 AM
   s. 8/07/12 – 1:15 PM
   t. 8/02/12 – 4:44 PM

    u.  8/02/12 – 4:17 PM

26. Specifically, Defendant placed collection calls to Plaintiff's cellular telephone on the following dates and/or times from 832-548-4275:

    v.  8/13/12 – 7:28 PM
    w.  8/07/12 – 12:55 PM
    x.  8/04/12 – 11:55 PM

27. Specifically, Defendant placed collection calls to Plaintiff's cellular telephone on the following dates and/or times from 832-548-4348:

    y.  8/15/12 – 1:16 PM
    z.  8/06/12 – 7:02 PM
    aa. 8/06/12 – 12:42 PM

28. Defendant called Plaintiff using an autodialer system.

29. Defendant used an "automatic telephone dialing system", as defined by 47 U.S.C. §227(a)(1), to place its repeated collection calls to Plaintiff seeking to collect the debt allegedly owed.

30. Defendant made numerous telephone calls to Plaintiff's cellular telephone. The telephone numbers that Defendant used to contact Plaintiffs with an "automatic telephone dialing system," were assigned to cellular telephone services as specified in 47 U.S.C. § 227(b)(l)(A)(iii).

31. Defendant used the LiveVox system to make collection calls to Plaintiff.

32. Each morning, Defendant's employee loads into the LiveVox system approximately three to three-and-one-half million phone numbers.

33. Using the LiveVox system, Defendant calls upwards of ninety percent of those phone numbers on a daily basis.

34. The inputted phone numbers are stored until midnight, when they are wiped from the system.

35. The LiveVox system selects the numbers to be called according to a protocol or strategy entered by Defendant.

36. When a call is answered, the LiveVox dialing system connects the called party with a live representative of Defendant.

37. When Defendant's representative is ready to begin communicating with debtors, the representative logs into the LiveVox system and toggles a button within the application indicating that the representative is ready to receive live callers.

38. Using a pre-programmed algorithm designed to limit the amount of time between calls, LiveVox begins to simultaneously call multiple debtors.

39. Defendant's representative receives an audible "beep" in their headset once the LiveVox system connects with a debtor and transfers the call.

40. The LiveVox dialing system "operates exactly as a predictive dialer would."

41. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A).

42. Defendant frequently uses skip-tracing services to locate telephone numbers used by consumers whom Defendant wishes to call.

43. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

44. Plaintiff is not a customer of Defendant's services, has never provided any personal information, including Plaintiff's cellular telephone number, to Defendant for any purpose whatsoever.

45. Plaintiff never provided Plaintiff's cellular telephone number to Defendant and never provided Plaintiff's consent to Defendant to be contacted on Plaintiff's cellular telephone.

46. Accordingly, Defendant never received Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on Plaintiff's cellular telephone pursuant to 47 U.S.C. §227(b)(1)(A).

47. Even if Defendant at one time had consent to place calls to Plaintiff's cellular telephone number, it no longer has consent to call Plaintiff after Plaintiff orally revoked such consent.

48. Despite this, Defendant continued to place repeated collection calls to Plaintiff, on Plaintiff's cellular telephone, using an "automated telephone dialing system."

49. The natural consequences of Defendant's statements and actions was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

50. The natural consequences of Defendant's statements and actions was to cause Plaintiff mental distress.

## DEFENDANT VIOLATED THE
## TELEPHONE CONSUMER PROTECTION ACT

28. Defendant made unsolicited commercial phone calls to the wireless telephone number of Plaintiff using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, as evidenced by the pre-recorded nature of the calls.

29. These phone calls were made without the prior express consent of Plaintiff.

30. Defendant's conduct therefore violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

8

WHEREFORE, Plaintiff, MARY HEFNER, respectfully requests judgment be entered against Defendant, DIVERSIFIED CONSULTANTS, INC., for the following:

31. As a result of Defendant's negligent violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).

32. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. 227(b)(1), Plaintiff is entitled to and requests treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) and 47 U.S.C. 227(b)(3)(C).

33. Plaintiff is entitled to and seek injunctive relief prohibiting such conduct in the future.

34. Any other relief that this Honorable Court deems appropriate.

DATED:  September 3, 2015            RESPECTFULLY SUBMITTED,


By: /s/Michael S. Agruss
    Michael S. Agruss
    SBN: 6281600
    Agruss Law Firm, LLC
    4611 N. Ravenswood Ave., Suite 201
    Chicago, IL 60640
    Tel: 312-224-4695
    Fax: 312-253-4451
    michael@agrusslawfirm.com
    Attorney for Plaintiff